IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ECI SOFTWARE SOLUTIONS, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 2:16-cv-821 |
| | § | |
| PROSPERITY COMPUTER | § | |
| SOLUTIONS, LLC, GREG MATATALL, | § | |
| AND WADE FRAZIER | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND
APPLICATION FOR INJUNCTIVE RELIEF**

Plaintiff ECI Software Solutions, Inc. ("ECI") files this Original Complaint and Application for Injunctive Relief against Prosperity Computer Solutions, LLC ("Prosperity"), Greg Matatall ("Matatall"), and Wade Frazier ("Frazier," and together with Prosperity and Matatall, the "Defendants"), and in support thereof states as follows:

S<small>UMMARY</small>

1.      This case arises from Defendants' misappropriation of ECI's trade secrets. Matatall and Frazier – both disgruntled former ECI employees – created Prosperity as a shell to house trade secrets they, and other former ECI employees acting in concert with them, acquired from ECI. Defendants are using ECI's trade secrets, wrongfully acquired from ECI, to develop a software platform that competes directly with ECI's platform, which Defendants intend to market and sell to ECI's customers using ECI's trade secrets. This lawsuit seeks to put an end to Defendants' scheme.

## PARTIES

2. ECI is a Delaware corporation with its principal place of business in Fort Worth, Texas.

3. Prosperity is a Texas limited liability company with its principal place of business in Big Sandy, Texas. Prosperity may be served through its registered agent Janet Matatall at 515 Private Road 3001, Big Sandy, Texas, or wherever she may be found.

4. Matatall and Frazier are individual residents of Texas who may be served at their business address at 515 Private Road 3001, Big Sandy, Texas, or wherever they may be found.

## JURISDICTION AND VENUE

5. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States. Specifically, ECI brings this suit under the Defend Trade Secrets Act, 18 U.S.C. § 1836. The Court has supplemental jurisdiction over ECI's state law claims under 28 U.S.C. § 1367(a).

6. The Court has personal jurisdiction over Prosperity because it is incorporated, and has its principal place of business, in Texas. The Court has personal jurisdiction over Matatall and Frazier because they are citizens of the state of Texas.

7. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because all defendants reside in this District. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the acts giving rise to ECI's claims occurred in this District.

## FACTUAL BACKGROUND

### ECI buys Advantage

8. ECI is a leading software company that offers enterprise resource planning ("ERP") solutions to its customers. In 2007, ECI bought substantially all of the assets of

Advantage Business Computer Systems, LLC and its affiliates ("ABC Co"), a software company located in Big Sandy, Texas whose products, marketed under the brand name "Advantage," are designed, developed, marketed, and licensed to businesses in the lumber and building materials, hardlines, building, and construction industries. Matatall was the primary software developer and owner of ABC Co and, following ECI's acquisition of it, Matatall came to work for ECI. Matatall also owned the building out of which ABC Co operated, which is some 200 yards from Matatall's house. Since 2007, ECI has leased that building from Matatall and conducted business out of it. In short, Matatall was both ECI's employee and its landlord.

9. Frazier, who is Matatall's son-in-law, was also an ABC Co employee who came to work for ECI. In 2012, Frazier resigned from ECI, citing an inability to deal with the pressures of the job. From 2012 to 2015, Frazier spent his time working in a CrossFit gym.

10. In January 2015, ECI acquired Spruce Computer Systems Inc. and began offering the Spruce software to its customers. In addition to Advantage and Spruce, ECI offers other software solutions to its customers, including, but not limited to, Next Generation Advantage, RockSolid, and RS MAX (collectively, the "ECI Software").

11. ECI's customers license the ECI software pursuant to written agreements and are required to pay ECI a monthly fee under those agreements for the right to use the ECI Software and receive ongoing support and maintenance ("ECI Support").

12. Such contracts with ECI are the only means by which ECI's customers may obtain the right to use and receive periodic updated releases of the ECI Software, which may incorporate, among other things, additional features, bug fixes, and alterations or enhancements of a similar nature ("ECI Updates").

13.  Such a support contract with ECI is the only means by which ECI's customers may obtain access to the programmers able to examine and modify proprietary, confidential, and trade secret information, including, but not limited to, the compiled code of the ECI Software, to resolve problems that may arise during a customer's use or operation of the system.

14.  To provide ECI Support and/or ECI Updates necessarily requires reproducing, modifying, altering, publishing, or displaying trade secrets regarding the ECI Software in a manner ECI has never licensed to any other party.

15.  Thus, only ECI has the right to provide ECI Updates and/or ECI Support to any user of the ECI Software.

Matatall and Frazier create a copycat business

16.  On February 4, 2015, ECI terminated Matatall's employment as part of a reduction in force. Matatall's termination upset him. He was Advantage's founder and had always viewed Advantage as "his" software, notwithstanding the fact that ECI paid him a considerable amount of money for it. Matatall, flush with cash that ECI paid him for Advantage, and angry that he had been fired, hatched a plan to get back at ECI and monetize the value of ECI's trade secrets: he would use ECI's trade secrets to create a copycat software business and undercut ECI and undermine ECI's customer relationships.

17.  On October 29, 2015, Matatall's wife filed papers with the Texas Secretary of State forming Prosperity. Prosperity's filing lists Frazier as its manager and sole owner, though Frazier has described Matatall's role at Prosperity as "father-in-law, consultant, and advisor." Matatall is also Prosperity's landlord: Prosperity operates out of Matatall's house. Matatall's office is in a corner of his bedroom, and he has created a separate parking area for employees

coming to work at Prosperity, many of whom worked just a several hundred yards away before they left ECI a short time ago.

<u>Matatall and Frazier scheme to misappropriate ECI's trade secrets</u>

18.   From the outset, Matatall and Frazier designed Prosperity as a shell to house information they intended to misappropriate from ECI.  Their first step was to set up a business model identical to ECI's, with three primary business areas: selling software, servicing customers who buy that software, and selling hardware and other aftermarket items to those customers.  Because Defendants needed ECI's trade secrets to duplicate ECI's success, they lured away multiple ECI employees who possessed that information.  Specifically, Defendants recruited and hired David Houser (Matatall's nephew), Wade Ellison, and David Blackstone, all of whom were longtime ECI employees who had unfettered access to ECI's trade secrets and an intimate knowledge of ECI's business and proprietary methodologies.

19.   Defendants hired Blackstone, a former ECI software developer, and Ellison, a former ECI software support specialist, directly from ECI to develop a virtual copycat version of ECI's Advantage software using trade secrets they learned while working for ECI, which is precisely what they are doing.[1]  Defendants intend to roll that system out in late July 2016.

20.   Defendants also needed a customer base to which they could sell their copycat software.  That was the point of hiring Houser, a former ECI sales manager, who had unfettered access to ECI's strategies, customer lists, prospect lists, and sales information, among other information.  In March 2016, Houser informed ECI that he was retiring and gave his two-weeks' notice.  At the time, ECI had no reason to doubt Houser and continued to allow Houser access to

---

[1]   On June 20, 2016, ECI filed an arbitration demand with the American Arbitration Association against Blackstone, Ellison, and Houser seeking to enforce contractual non-compete, non-solicitation, and confidentiality obligations that they are violating in furtherance of Defendants' scheme.

ECI's trade secrets. Unbeknownst to ECI, however, Houser was in contact with Defendants and accepted employment at Prosperity without informing ECI. Since ECI was operating on Houser's representation that he was retiring—rather than going to work for a direct competitor—ECI allowed Houser to keep the ECI laptop and cell phone used by Houser for a short transition period, rather than demanding their immediate return. In the two-week period between Houser's departure form ECI and his return of the laptop and cell phone, Houser accessed ECI's proprietary customer relationship management system containing ECI's trade secrets and copied ECI's trade secret information to at least one flash drive.

21. In April 2016, Ellison announced that he was leaving ECI but refused to tell ECI where he was going to work—only that he found a position as a QA analyst and would be able to work from home. Unbeknownst to ECI, however, Ellison, like Houser, was in contact with Defendants and accepted employment at Prosperity without informing ECI. Prior to his departure from ECI, Ellison sent multiple emails containing ECI's trade secrets to one of his personal email addresses.

22. With Houser, Blackstone, and Ellison on the payroll, Defendants were well on their way to creating their copycat software. Defendants then went to great lengths to convince the public that Prosperity *was* ECI: they used ECI's address for Prosperity's registered address and had Prosperity's mail (including hardware and equipment purchases) delivered to ECI's office. As described below, Defendants also sent out false and misleading marketing materials designed to deceive ECI's customers and prospects.

23. Defendants' efforts to present Prosperity as ECI is hardly surprising since Frazier admitted that nearly 100% of Prosperity's sales are to ECI customers.

### Defendants double down on their efforts to misappropriate ECI's trade secrets

24. It seems that Defendants and the employees they recruited did not know, or could not recall, enough of ECI's trade secrets to make Prosperity successful, so they went to the source, ECI, for more trade secrets. Their first effort was carried out by Houser remotely. Specifically, on March 17, 2016, two days after he left ECI, Houser accessed ECI's customer relationship management system. Once in the system, Houser had unfettered access to all manner of ECI's trade secrets, including, but not limited to, information related to ECI's customers, prospects, pricing, products, margins, profit percentages, credit profiles, preferences and markets. That information is created using proprietary ECI methodologies.

25. ECI's customer relationship management system allowed Houser to access and produce reports containing and/or analyzing this customer information, as well as derivative information such as buying patterns, customer needs and preferences, and marketing and pricing strategies for customers. On information and belief, he did exactly that, and then provided ECI's trade secret information to Defendants to use in furtherance of their scheme.

26. Houser also appears to have acquired information on the ECI laptop he kept after his employment ended. Specifically, though his last day at ECI was March 15, 2016, he kept the laptop until March 30, 2016.[2] Worse yet, forensic examination of the laptop shows that he linked at least one flash drive to it immediately prior to returning the laptop to ECI, and, on information and belief, downloaded ECI's trade secrets from the laptop to the flash drive.

27. Despite Houser's efforts, Defendants wanted more. On June 9, 2016, upon information and belief, Defendants or someone working at their direction physically entered

---

[2] At the time, ECI was not concerned about the delay because Houser represented to ECI that he was retiring. Had Houser not concealed his true intentions – to go to work for Prosperity – ECI would have demanded the immediate return of the laptop.

**PLAINTIFF'S ORIGINAL COMPLAINT AND APPLICATION FOR INJUNCTIVE RELIEF - Page 7**
*SAC 442755540v2*

ECI's office, to which Matatall had access by virtue of the fact that he was ECI's landlord.  ECI found what appears to be Matatall's laptop connected to ECI's network, sitting on a service cart in a back room:



The only plausible reason for Matatall to connect his computer to ECI's network is to acquire information on that system.  On information and belief, he did exactly that, adding to the cache of ECI trade secrets already misappropriated by Defendants.

28.     More recently, Defendants apparently decided that what they really needed to create their copycat software was ECI's source code.  Over the Independence Day weekend, a hard drive containing boot information necessary to launch the development code for ECI's Advantage system was stolen from ECI's Big Sandy office, to which Matatall had access.  The circumstances surrounding that theft strongly indicate that Defendants, or someone acting on

their behalf, were responsible for it. Specifically, from the numerous and other highly valuable technology components located in ECI's office, the same office of which Matatall is the landlord, the thief targeted only the particular computer and hard drive that contained ECI's software development code. That computer is indistinguishable from the others, meaning that the thief knew exactly what he wanted and where to find it. There were no signs of forced entry, and nothing else was taken in the theft.[3]

29.     Further, while the general public has no use for the Advantage software development code, Defendants have at least three uses. First, access to ECI's code allows Defendants to carry out their scheme, as described below, to provide free maintenance and support to ECI's customers in an attempt to persuade them to breach their contracts with ECI and use Prosperity instead.

30.     Second, ECI's code is customer-specific, with different customers having different, customized levels and combinations of functionality. Defendants need to know with specificity which software product and functionality ECI provides to each of its customers so that they can service those customers and create a competing software product that provides the same customization, levels, and combinations of functionality.

31.     Third, ECI's code provides Defendants with a roadmap to use in the creation of their copycat software product. Defendants have taken the sophomoric position that their copycat product is somehow "different" from ECI's product because it is written in a different software language. That distinction is obvious nonsense: a recipe for secret sauce can be used to create the secret sauce no matter if the recipe is written in English or Chinese. In other words, Defendants' scheme is to translate ECI's proprietary features and functionality into a different

---

[3] A report has been filed, and the Upshur County Sherriff's office is investigating the theft.

software language, then sell their copycat translation to ECI's customers. To translate ECI's code, Defendants of course need ECI's underlying code base for the software they intended to copy. It appears that they accomplished that goal on the weekend of July fourth.

32. Tellingly, shortly after the theft of the hard drive containing ECI's source code, Matatall sent an unsolicited email to ECI saying that he had "heard" about the theft of ECI's hard drive and wanted ECI to know that he had "NEVER DONE ANYTHING CRIMINAL." Because ECI did not publicize the theft, ECI realized that there was no way Matatall would have known about the theft of the hard drive unless he was involved in it or in communication with someone who was. When ECI asked Matatall how he learned about the theft, Matatall responded: "my wife told me she saw the police car." Of course, seeing a police car parked outside a building does not give rise to the knowledge that someone has stolen a computer hard drive from that building. The inescapable conclusion is that Defendants carried out or, at a minimum, were involved in the theft of ECI's hard drive containing source code.

Defendants are actively interfering with ECI's customer relationships

33. Defendants' attempts to lure away ECI's customers are not limited to using trade secrets obtained from ECI. They are also actively interfering with ECI's customer relationships. Specifically, Matatall solicits and offers to do free service work for any ECI customer, sending instant messages framed with: "CALL ANYTIME FOR SOFTWARE AND HARDWARE SUPPORT – NO CHARGE IF YOU ARE PAYING ECI MAINTENANCE." These instant messages are obviously designed to incentivize ECI's customers to breach their contracts with ECI and enter into new ones with Prosperity. The fact that Matatall does not even seek compensation for his services demonstrates the malice that attends his actions: he would rather spend his time sitting in his bedroom office doing free work for ECI's customers than spending

PLAINTIFF'S ORIGINAL COMPLAINT AND APPLICATION FOR INJUNCTIVE RELIEF - Page 10
SAC 442755540v2

his considerable fortune. Upon information and belief, Matatall and the other Defendants would be unable to offer these support services without the unauthorized use of ECI's trade secrets.

34. On information and belief, in the course of providing these unauthorized support services to ECI's customers, Defendants have illicitly acquired, copied, installed, accessed, and run the ECI Software and/or ECI Updates on their systems.

35. Additionally, upon information and belief, Defendants have provided unauthorized support services, including, but not limited to ECI Updates, to former ECI customers whose support contracts with ECI have been terminated and are no longer licensed to receive ECI Updates.

36. Defendants are also sending blast emails designed to interfere with ECI's customer relationships. The emails, directed at ECI's customers, advertise that Prosperity is operating "the business model adopted when Advantage Business Computer Systems was created." Even worse, the subject line of those emails proclaim: "New Company Name. Same Familiar Faces." Plainly, the "same familiar faces" are the ECI employees Defendants have wrongfully lured away. Indeed, Houser testified that to his customers he was "the face of ECI."

37. Importantly, Frazier used ECI's trade secrets to create the mailing list for his blast emails: he has admitted that some 90% of the people to whom he sent his "same familiar faces" email are ECI customers, whom he knew by virtue of his employment at ECI. Further to that end, Houser admitted that he has been working with Frazier to develop marketing strategies directly targeted at ECI's customers.

Damage to ECI's business

38. The actions described above have already taken a toll on ECI's business. ECI has lost, or had interrupted, business deals with at least three customers. At least one customer is

considering a proposal from Defendants to take over ECI's work. Upon information and belief, Defendants are improperly diverting revenue and business from ECI, which is losing the proceeds it would have made from such transactions in accordance with its licensing structure and fees. Defendants' actions have caused – and are continuing to cause – irreparable harm to ECI in the form of not only lost sales, but the loss of or damage to existing customer relationships, the monetary cost of which is impossible to quantify.

## CAUSES OF ACTION

### Count 1: Misappropriation of Trade Secrets (DTSA)

39. ECI adopts the preceding paragraphs as if fully set forth herein.

40. The Defend Trade Secrets Act codified at Title 18, Section 1836 of the United States Code provides that "[a]n owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce."

41. ECI owns trade secrets in the form of, among other things, its source code, software designs and methodologies, and information related to ECI's customers, prospects, pricing products, margins, profit percentages, credit profiles, preferences and markets. ECI takes significant measures to keep its trade secrets secret by, among other things, requiring employees to sign confidentiality and non-disclosure agreements, by restricting access to its trade secrets, and by requiring password login to access its trade secrets. ECI's trade secrets are of independent economic value in that they form the core of ECI's business. ECI's trade secrets relate to products, including, but not limited to the Advantage product, that are used in interstate and foreign commerce.

42. Defendants have misappropriated ECI's trade secrets by acquiring and using them when Defendants knew they were acquired by improper means, namely breaches and/or inducement of breaches of a duty to maintain secrecy and theft.

43. ECI has suffered and is continuing to suffer actual loss caused by the misappropriation of its trade secrets, and ECI is entitled to recover damages for that loss. ECI is also entitled to recover damages for unjust enrichment caused by the misappropriation of its trade secrets. Because Prosperity is nothing more than a clone created for the purpose of exploiting ECI's misappropriated trade secrets, any revenue Prosperity generates constitutes unjust enrichment.

44. Defendants' misappropriation was done willfully and maliciously, and ECI seeks exemplary damages from Defendants.

### Count 2: Misappropriation of Trade Secrets (TUTSA)

45. ECI adopts the preceding paragraphs as if fully set forth herein.

46. The actions described in the preceding paragraphs above also constitute misappropriation of trade secrets under the Texas Uniform Trade Secret Act, codified at Chapter 134A of the Texas Civil Practice and Remedies Code. In addition to the relief sought under the DTSA, ECI also seeks exemplary damages for the willful and malicious misappropriation of its trade secrets.

### Count 3: Tortious Interference With Existing Agreements With ECI Employees

47. ECI adopts the preceding paragraphs as if fully set forth herein.

48. ECI has valid contracts with its current and former employees, including, but not limited to, Houser, Ellison, and Blackstone.

49. Defendants willfully and intentionally interfered with ECI's contracts with its employees, including, but not limited to, Houser, Ellison, and Blackstone, which interference has proximately and directly caused damages suffered by ECI.

50. ECI is entitled to recover from Defendants its damages suffered as a result of Defendants' interference.

51. Defendants' interference was done maliciously, and ECI seeks exemplary damages from Defendants in an amount to be determined by the trier of fact taking into account, among other things, the net worth of each Defendant.

### Count 4: Tortious Interference With Existing Agreements With ECI Customers

52. ECI adopts the preceding paragraphs as if fully set forth herein.

53. ECI has valid contracts with its customers.

54. Defendants willfully and intentionally interfered with ECI's contracts with its customers by, among other things, offering and performing maintenance services for such customers at no charge and by attempting to persuade ECI's customers that Prosperity and ECI are the same company, which interference has proximately and directly caused damages suffered by ECI.

55. ECI is entitled to recover from Defendants, individually and jointly and severally, its damages suffered as a result of Defendants' interference.

56. Defendants' interference was done maliciously, and ECI seeks exemplary damages from Defendants in an amount to be determined by the trier of fact taking into account, among other things, the net worth of each Defendant.

### Count 5: Conspiracy

57. ECI adopts the preceding paragraphs as if fully set forth herein.

58. Defendants were members of a combination of two or more persons.

59. The object of the combination was to accomplish an unlawful purpose or a lawful purpose by unlawful means.

60. Defendants had a meeting of the minds on the objective and/or course of action.

61. Defendants have each committed unlawful, overt acts to further the objective and/or course of action.

62. ECI suffered damages as a proximate and direct result of Defendants' wrongful conduct.

63. ECI is entitled to recover from Defendants, individually and jointly and severally, its damages suffered as a result of Defendants' wrongful conduct.

64. Defendants' wrongful conduct was done maliciously, willfully, and intentionally, and ECI seeks exemplary damages from Defendants in an amount to be determined by the trier of fact taking into account, among other things, the net worth of each Defendant.

## Count 6:  Aiding & Abetting Breach of Fiduciary Duty

65. ECI adopts the preceding paragraphs as if fully set forth herein.

66. Houser, Ellison, and Blackstone each committed the tort of breach of fiduciary duty.

67. Defendants had knowledge that Houser's, Ellison's, and Blackstone's conduct constituted torts.

68. Defendants had an intent to assist Houser, Ellison, and Blackstone in committing the torts.

69. Defendants gave Houser, Ellison, and Blackstone substantial assistance or encouragement in breaching their fiduciary duties to ECI.

70. Defendants' assistance or encouragement was a substantial factor in causing Houser's, Ellison's, and Blackstone's breaches of fiduciary duties and proximately and directly caused damages suffered by ECI.

71. ECI is entitled to recover from Defendants, individually and jointly and severally, its damages suffered as a result of Defendants' aiding and abetting Houser's, Ellison's, and Blackstone's breaches of fiduciary duties.

72. Defendants' aiding and abetting Houser's, Ellison's, and Blackstone's breaches of fiduciary duties was done maliciously, willfully, and intentionally, and ECI seeks exemplary damages from Defendants in an amount to be determined by the trier of fact taking into account, among other things, the net worth of each Defendant.

### Attorneys' Fees

73. ECI adopts the preceding paragraphs as if fully set forth herein.

74. Because Prosperity, Matatall and Frazier willfully and maliciously misappropriated ECI's trade secrets, ECI is entitled to recover its reasonable attorneys' fees under 18 U.S.C. § 1836(b)(3)(D) and Texas Civil Practice and Remedies Code §134A.005.

### Application for Permanent Injunction[4]

75. ECI adopts the preceding paragraphs as if fully set forth herein.

76. ECI seeks to enjoin Defendants from using ECI's trade secrets and interfering with ECI's customer relationships.

77. ECI is entitled to injunctive relief because it will suffer imminent and irreparable injury in the form of, among other things, damage to its customer relationships, a negative

---

[4] Plaintiff has not yet uncovered the full extent of Defendants' scheme and wrongful conduct. ECI anticipates that, after it conducts initial discovery, it may be forced to seek a temporary restraining order and temporary injunction.

impact on ECI's ability to compete in the marketplace, and the loss of the secret nature of its trade secrets.

78. ECI has no adequate remedy at law because, among other reasons, the damages that will occur absent an injunction are difficult, if not impossible, to quantify with any pecuniary standard and ECI cannot be adequately compensated in damages.

79. The injuries ECI faces outweigh the injury, if any, that would be sustained by Defendants as a result of injunctive relief.

80. The injunctive relief ECI seeks would not adversely effect public policy or public interest. To the contrary, injunctive relief is necessary to support, protect, and effectuate the strong public policy and public interest in protecting trade secrets.

81. ECI requests that the Court, upon final trial or hearing, permanently enjoin Matatall, Frazier, and Prosperity from using ECI's trade secrets and interfering with ECI's customer relationships.

## CONDITIONS PRECEDENT

82. All conditions precedent to recovery for the claims asserted herein have occurred, been performed, or been waived.

## PRAYER

WHEREFORE, ECI respectfully requests that Prosperity, Matatall, and Frazier each be summoned to appear and answer herein and that, upon final trial hereof, ECI be awarded the relief sought herein against Prosperity, Matatall, and Frazier, individually and jointly and severally, including, but not limited to:

A.  An order impounding all copies of the ECI Software, ECI Updates, and ECI's trade secrets that are in the possession, custody, or control of Defendants or, as a result of Defendants' actions, their agents or customers;

B.  An order impounding all computers, servers, and storage devices (including, without limitation, flash drives and external hard drives) in Defendants' possession, custody, or control that contain ECI Software, ECI Updates, and/or ECI's trade secrets;

C.  A permanent injunction restraining Defendants and their respective officers, employees, agents, subsidiaries, affiliates, and all others acting in concert or participation with them from: (i) directly or indirectly reproducing, modifying, altering, publishing, displaying, selling, marketing, or otherwise disposing of the ECI Software, ECI Updates, and/or ECI's trade secrets and requiring the return of all materials that contain ECI's trade secrets; and (ii) directly or indirectly contacting ECI's customers.

D.  An order requiring the collection and destruction of all copies of the ECI Software, ECI Updates, and ECI's trade secrets in the possession, custody, or control of Defendants, or, as a result of Defendants' actions, their agents or customers;

E.  An accounting of damages through judgment and post-judgment until Defendants are enjoined from further misappropriating activities;

F.  ECI's actual, special, and consequential damages;

G.  The amount by which Defendants have been unjustly enriched as a result of their misappropriation of ECI's trade secrets;

H. Punitive and exemplary damages;

I. Pre-judgment and post judgment interest at the highest rates allowed by law;

J. All costs of court; and

K. All such other and further relief, whether general or special, at law or in equity, to which ECI may be justly entitled.

Respectfully submitted,

*/s/ Christopher M. LaVigne*
Christopher M. LaVigne
  State Bar No. 24026984
  lavignec@gtlaw.com
P. William Stark
  State Bar No. 24046902
  starkb@gtlaw.com
**GREENBERG TRAURIG LLP**
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
Telephone:  (214) 665-3660
Facsimile:  (214) 665-5960

**ATTORNEYS FOR PLAINTIFF**

**PLAINTIFF'S ORIGINAL COMPLAINT AND APPLICATION FOR INJUNCTIVE RELIEF - Page 19**
*SAC 442755540v2*